## Case No. 3,925.

### In re DISTRICT ATTORNEY OF UNITED STATES.

Circuit Court, W. D. Tennessee. Dec., 1872.

GRAND JURY—PROCEDURE—FUNCTIONS AND POWERS OF DISTRICT ATTORNEY — MINUTES OF EVIDENCE.

[1. The United States district attorney or his assistant may be present before the grand jury to advise on questions of law, to submit evidence, and to examine witnesses, but he should give no advice as to the sufficiency of the evidence to convict, and should take no part in the deliberations as to the guilt of accused. He should withdraw during such deliberations, if requested to do so.]

[2. The minutes of the evidence taken before the grand jury should be deposited with the district attorney, to be kept among the records of the government.]

A difference of opinion having arisen between the United States district attorney and the foreman of the grand jury in reference to the right of the district attorney or his assistant to appear before that body and conduct the examination of witnesses for the government and advise them upon matters of law and questions arising upon the construction of the federal statutes, and the matter having been brought to the attention of the court, the grand jury was requested to appear in open court, when they were further instructed and charged as follows in the premises, and further as to the right of the government's attorneys to the minutes of testimony of the witnesses examined before the grand jury:

EMMONS, Circuit Judge. Gentlemen of the Grand Jury: I am informed by the district attorney that some difference of opinion exists between you in reference to his right to be present and aid you in the examination of witnesses, and give you his advice as to the law. I can not understand the source of such a doubt on the part of jurors long resident in Tennessee, where, alike in the federal and state courts, the practice has been uniform for that officer to assist and advise the grand jury in its labors. I learn by inquiry from the most experienced members of the state bar that its attorneys general from the earliest times have attended grand juries and informed them of all matters in his hands, and aided in the examination of witnesses. With rare exceptions, this has been the usage substantially in every state in the Union as it is in England. When from differences of judicial opinion in some states, the practice was not uniform, it has been corrected by statute. The question having been made in the circuit court of the United States of the northern district of New York, Judge Nelson, of the supreme court, laid down the unquestioned law upon the subject as follows: "It is the uniform practice in the federal and state courts for the clerk and assistant of the district attorney to attend the grand jury and assist in investigating the accusations presented before it. That has been the practice to my knowledge, without question, ever since I have had any connection with the administration of criminal justice. In England even the prosecutor may appear before the grand jury and aid the representative of the crown in respect to the evidence and the management of the case. We cannot, at this late day, overturn a uniform practice that has been settled for so long a time. You must assume that the attendance of the clerk of the district attorney before the grand jury to aid in bringing out the testimony, is admissible. But if any abuse has been committed by him, or by any other person, it is a proper subject for investigation by the court." U. S. v. Reed [Case No. 16,134]. The duties and confidence imposed in this responsible officer are thus described by the supreme court of Tennessee in the case of Fout v. State, 3 Hayw. 98: "He is to judge between the people and the government; he is to be the safeguard of the one and the advocate of the rights of the other; he ought not to suffer the innocent to be oppressed or vexatiously harassed, any more than those who deserve prosecution to escape; he is to pursue guilt; he is to protect innocence; he is to judge of circumstances, and, according to their true complexion, to combine the public welfare and the safety of the citizens, preserving both, and not impairing either; he is to decline the use of individual passions and individual malevolence, when he can not use them for the advantage of the public; he is to lay hold of them where public justice, in sound discretion, requires it. Can these views be attained by leaving prosecutions to every attorney who will take a fee to prosecute? Does every one feel the responsibility imposed by the oath of the solicitor general by his selection for the discharge of these duties; by the confidence of the public imposed in him; by a consciousness of the impartial duties he owes to society and his country?"

This high officer cannot thus stand between the innocent and the guilty by the exercise of that sound discretion which is here accorded to him, if he is to be excluded from the grand jury room. The proposition is novel, and its adoption would be as impolitic as novel. Especially is this so in that large class of offences under the modern revenue laws, so difficult of construction and so fre-

quently changed. It would be impossible for an unprofessional jury, without this assistance, to proceed a single day properly with its duties. It is not unfrequent for the court to require much explanation from the district attorney, in reference to the meaning and connections of such laws, before it is able intelligently to suffer him to proceed with evidence before the trial jury. We do not understand how it is possible for the grand jury to perform its duty with less; or how, without constant explanation, it can determine the proper application of the facts to the law. Although not requested to go further in our instructions, we deem it well to add that the limit of the district attorney's duties is reached when he has explained the meaning of the laws, laid before you all evidence in his hands, officially, and aided in the examination of the witnesses. He should take no part whatever in your discussions as to guilt. The weight and credibility of the testimony is wholly for you, without even a suggestion from him. And although in plain cases such a formality is not usually complied with, we should deem it decorous for the government officer to withdraw when you are to decide upon the case, and in all questions of importance, and of doubt, indelicate for him to remain. Without exception, it is his duty to do so upon request of the jury when he has submitted all the evidence in his possession or which you may desire yourselves to send for. His opinion as to the sufficiency of the evidence to prove guilty should never be given, even if asked by the jury. His opinion in reference to the meaning of the law should never be withheld. Whether the *facts* are proved, he has no right to suggest even. Although I have no opportunity to consult with my brother, the district judge, on this subject, there is no doubt whatever, that such is his view of the law. Under his administration for years it has been applied, and in his often repeated instructions he refers the grand jury to the district attorney for information in all matters when it does not desire information from the court. You ask, also, what you shall do with the minutes of the evidence when you are through with your duties. They should be delivered to the district attorney, and be by him kept among the records of the government. They are necessary to enable him to prosecute offenders. Should he be excluded from the jury room and refused the inspection of your minutes of the testimony, the public business of his department could not be conducted; there would be no possible means for the prosecuting attorney officially to learn large classes of facts indispensable to the performance of his duty as public prosecutor. It is suggested that your oath of secrecy compels you to destroy the evidence you take for the government. The motive for this secrecy is only to prevent untimely publication of the indictment, that offenders may escape, and as some of the books I think rather uselessly add, to prevent defendants from tampering with the witnesses and preparing false testimony. Whatever may be its motive, it does not extend to legitimate calls for your doings by the government, either to testify to what witnesses swore before you, if they swear differently elsewhere, or to enable it to prepare for the trial of offenders against whom you find indictments. The government may proceed in many cases if the district attorney elected so to do without your agency. It is only because the law officers prefer your intelligent and impartial investigation in all cases to the assumption of responsibility on their part that they do not proceed by information instead of indictment. We heartily agree with their enlightened decision in this regard. Nothing can be more useful to the country than this study of its laws by so many leading men yearly. Its worth overtops ten times the petty cost of your assembling and deliberations. The citizen, too, who is indicted by his fellows, selected alone from among those he is compelled to respect, will, in the few cases where he is wrongfully arraigned, have more confidence that there was no attempt to oppress him. We should feel a sincere sorrow that any necessity should arise forever abandoning on the part of the government an instrumentality so beneficent as that of the grand jury.

---

DISTRICT ATTORNEYS' FEES. See Append. Fed. Cas.

DISTRICT OF COLUMBIA (RIDDLE v.). See Case No. 11,808.

DISTRICT OF COLUMBIA (WILSON v.). See Case No. 17,822.

DISTRICT OF NORTH CAROLINA (UNITED STATES v.). See Case No. 15,727.

DISTRICT SAV. ASS'N v. MARKS. See Case No. 3,812.

DITTENTHALER (SHARP v.). See Case No. 12,709.